UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED
WILLIAM T. WALSH, CLERK
2010 MAR 24  A 10: 26

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 10- 208-RMB |
| | : | 18 U.S.C. § 1349 |
| v. | : | 18 U.S.C. § 1956(h) |
| | : | |
| JONG SHIN | : | |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Camden, charges:

### COUNT 1 — CONSPIRACY TO COMMIT WIRE FRAUD
### (18 U.S.C. § 1349)

#### The Defendant and Her Co-Conspirators

1. At all times relevant to this Indictment:

    a. Defendant Jong Shin resided in Bayside, New York, and was employed as a traveling nurse for a home healthcare company (the "Healthcare Company"). Jong Shin maintained two bank accounts in her name at TD Banknorth NA, formerly doing business as Commerce Bank N.A. ("TD Bank"), and at J.P. Morgan Chase Bank NA ("J.P. Morgan Bank"). Jong Shin devised and executed the scheme to commit wire fraud described more fully herein, by purchasing seven residential properties in Atlantic City, New Jersey (the "Properties"), and then recruiting "Straw Purchasers" to purchase the Properties at an artificially inflated value.

    b. E.Z., a co-conspirator who is not named as a defendant herein, resided in Farmingdale, New York, and was employed as a mortgage broker for a mortgage brokerage firm identified herein as SMB. SMB was a corporation located in

Flushing, New York that was engaged in the business of originating residential mortgage loans to the public. Based upon false and fraudulent information provided by Jong Shin and mortgage broker E.Z., SMB made and/or originated several mortgage loans to Jong Shin and the various Straw Purchasers.

c. E.P., a co-conspirator who is not named as a defendant herein, was employed as a mortgage broker for a mortgage brokerage firm identified herein as NJM. NJM was a corporation located in Little Falls, New Jersey that was engaged in the business of originating residential mortgage loans to the public. Based upon false and fraudulent information provided by Jong Shin and mortgage broker E.P., NJM made and/or originated several mortgage loans to Jong Shin which enabled her to purchase the Properties.

d. M.O., a co-conspirator who is not named as a defendant herein, resided in Somers Point, New Jersey, and was self-employed as a residential and commercial real estate appraiser for an appraisal firm identified herein as OAS. M.O. made all of the relevant real estate appraisals for the Properties, several of which were at an artificially inflated value.

e. Tula Rampersaud, a co-conspirator who is not named as a defendant herein, resided in Hollis, New York, and was employed as a traveling nurse at the Healthcare Company, and was a friend and co-worker of Jong Shin. Tula Rampersaud was a straw purchaser.

f. Sudesh Rampersaud, a co-conspirator who is not named as a defendant herein, resided in Hollis, New York, and was the husband of Tula Rampersaud. Sudesh

Rampersaud was a straw purchaser.

g. Steven Boswell, a co-conspirator who is not named as a defendant herein, resided in Bayside, New York, and was the ex-husband of Jong Shin. Steven Boswell maintained a business checking account in the name of Redcoat Inc. at TD Bank, formerly doing business as Commerce Bank, account number ******4271 (the "Steven Boswell bank account"). Steven Boswell was a straw purchaser.

h. M.T., a co-conspirator who is not named as a defendant herein, resided in Atlantic City, New Jersey, and was introduced to Jong Shin through a mutual acquaintance at a real estate brokerage business operating in the Atlantic City, New Jersey area, identified herein as VTYR. M.T. was a straw purchaser.

i. Anna Shea, a co-conspirator who is not named as a defendant herein, resided in Millville, New Jersey, and was employed as a Title Clerk at a title agency identified herein as ETA in Northfield, New Jersey, where she conducted residential and commercial real estate closings. ETA maintained and used a checking account number ******2519 at TD Bank, formerly doing business as Commerce Bank, as an escrow account (the "ETA Escrow Account").

## **Mortgage Lending Generally**

2. Mortgage loans were loans funded by banks and other financial institutions ("Lenders") to enable borrowers to finance the purchase of real estate. To apply for a mortgage loan, borrowers/buyers typically filled out several forms, including a form called the Uniform Residential Loan Application. Lenders evaluated and relied upon the financial representations contained in the Uniform Residential Loan Application pertaining to the borrower's income, credit eligibility and down payment requirements, as well as other documents, in deciding whether to loan a particular borrower money for a mortgage. In addition, Lenders also assessed the value of the real estate that would secure the mortgage loan by reviewing and relying on property appraisals and other documents.

3. Mortgage brokers were third party entities who acted as go-betweens for the borrowers and Lenders in mortgage transactions. Mortgage brokers were generally responsible for collecting documents from the purchaser in support of the mortgage loan, including the loan application. Additionally, the mortgage broker interviewed the proposed borrower and obtained all pertinent data including the borrower's name, date of birth, social security number, home address, monthly base employment income, employer, assets and liabilities. Frequently, the mortgage broker made the initial loan to the borrower and then sold it to a Lender after a short period of time, usually between one to thirty days after making the loan. Other times, the mortgage broker simply obtained and verified all of the relevant information for the Lender, including the information on the Uniform Residential Loan Application, and the Lender made the mortgage loan directly to the borrower.

4. Real estate appraisers were responsible for determining the fair market value of

properties. Fair market value was defined as the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, in which the buyer and seller act prudently and knowledgeably, and assuming the price is not affected by undue stimulus.

5. Frequently, the mortgage loan was closed at a title company or at an attorney's office. If a loan closed at a title company, the title company's escrow officers were responsible for depositing the monetary instruments and funds provided by the borrower (including down payments) and mortgage funds from the Lender (which are typically obtained by wire transfer) or on its behalf to the title company's escrow account, and, when authorized by the parties to the transaction and the Lender, for disbursing the funds from the escrow account to various individuals and entities as detailed on the U.S. Department of Housing and Urban Development Settlement Statement (hereinafter "HUD-1 Settlement Statement"). The HUD-1 Settlement Statement detailed the actual disbursement of monies, including mortgage loan funds, to the proper entities and/or individuals according to the original loan application.

6. After the loan application was approved, the mortgage Lender caused funds to be transmitted (typically by wire transfer) to a settlement agent, such as a title company or a closing attorney. The title companies and/or closing attorneys then distributed the funds according to the HUD-1 Settlement Statements, generally with a large portion of the funds going to the seller of the property. After funding the mortgages, the mortgage Lenders either serviced the loans during the mortgage period or sold them in the secondary market.

## THE CONSPIRACY

7. From in or about June 2006 through in or about December 2006, in Atlantic City, in the District of New Jersey, and elsewhere, defendant

JONG SHIN,

did knowingly and intentionally conspire and agree with Anna Shea, E.Z., M.O., Tula Rampersaud, Sudesh Rampersaud, Steven Boswell, M.T. and others to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice is in substance set forth below, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

## OBJECT OF THE CONSPIRACY

8. The object of the conspiracy, which caused more than one million dollars in losses to various mortgage Lenders, was to profit from the sale and refinancing of the Properties at inflated prices by obtaining mortgage loans for unqualified borrowers using fraudulent loan applications, appraisals, HUD-1 Settlement Statements, and other documents.

## MANNER AND MEANS OF THE CONSPIRACY

9. It was part of the conspiracy that Jong Shin purchased the Properties in and around Atlantic City, New Jersey. Prior to purchasing the Properties, Jong Shin obtained from M.O. an appraisal report for each, and also provided false and fraudulent financial information to E.P. and other mortgage brokers in order to obtain the original loans necessary to finance the purchase of the Properties.

10. It was further part of the conspiracy that Jong Shin arranged to sell the Properties to friends and associates whom she knew had good credit scores, but lacked the financial resources to qualify for mortgage loans to purchase the Properties, including individuals identified herein as Tula Rampersaud, Sudesh Rampersaud, Steven Boswell, M.T., and A.C. (the "Straw Purchasers").

11. It was further part of the conspiracy that Jong Shin induced the Straw Purchasers to buy the Properties by offering to pay them money for each property put in their name, and by promising that in exchange for purchasing the Properties in their names, the Straw Purchasers would not have to pay deposits or closing costs to acquire the Properties, and would not have to make monthly mortgage payments after they owned the Properties.

12. It was further part of the conspiracy that Jong Shin, E.Z. and others falsified loan applications by providing false information concerning the Straw Purchaser's employment, income and assets.

13. It was further part of the conspiracy that M.O. prepared false and fraudulent appraisals which artificially inflated the values of the Properties.

7

14. It was further part of the conspiracy that Jong Shin, E.Z., and others, submitted and caused to be submitted to the Lenders false and fraudulent mortgage loan applications and appraisals to induce the Lenders to make the loans to the Straw Purchasers.

15. It was further part of the conspiracy that Anna Shea, Jong Shin, E.Z., the Straw Purchasers and others caused fraudulent documents to be prepared concerning the Properties, including HUD-1 Settlement Statements that were supposed to accurately reflect the amounts of money due from the Straw Purchasers and to be paid to the sellers to close the sales of the Properties.

16. It was further part of the conspiracy that Anna Shea, Jong Shin, and the Straw Purchasers conducted the closings on the Properties at the offices of ETA in Northfield, New Jersey.

17. It was further part of the conspiracy that, prior to and during the closings, Anna Shea manipulated the HUD-1 Settlement Statements, settlement disbursement sheets and other documents to show that the Straw Purchasers made down payments on the Properties, while in actuality no such down payments were made, and/or to show that the Straw Purchasers brought funds to the closing, while in actuality no such funds were provided.

18. It was further part of the conspiracy that Anna Shea directed all the closings and presented all the fraudulent documents to the Straw Purchasers for signatures, including but not limited to: mortgage loan applications, HUD-1 Settlement Statements, deeds, mortgages and notes.

19. It was further part of the conspiracy that Anna Shea executed wire transfers and/or wrote checks for the proceeds from such transactions from the ETA Escrow Account at TD Bank to Jong Shin and others.

20. It was further part of the conspiracy that Jong Shin and others took the proceeds from these fraudulent mortgage loans by having Anna Shea electronically transfer money from ETA's Escrow Account directly into bank accounts in Jong Shin's name at TD Bank and J.P. Morgan Chase Bank, and by depositing checks from ETA's Escrow Account into their personal bank accounts.

21. It was further part of the conspiracy that, in an attempt to further profit from the scheme and distance herself and Straw Purchasers Steven Boswell and A.C. from the scheme, Jong Shin had Steven Boswell and A.C. resell the properties that they had purchased to other Straw Purchasers. In order to accomplish this, Jong Shin obtained new fraudulently inflated appraisals for those properties from M.O., and directed Steven Boswell and A.C. to resell those properties to other unqualified Straw Purchasers for whom the conspirators obtained new, fraudulent mortgage loans.

22. In furtherance of the conspiracy and to effect its unlawful object, its members committed and caused to be committed numerous transactions involving the below listed Atlantic City, New Jersey Properties, each of which followed the same general pattern:

    a. **133 South Wilson Avenue, Atlantic City, New Jersey**

        i. **The Initial Purchase**: On October 13, 2006, Jong Shin purchased the property located at 133 South Wilson Avenue, Atlantic City, New Jersey for $285,000 from L.S., an unrelated third party. In support of this purchase, Jong Shin obtained an appraisal report dated October 1, 2006 from M.O. which showed the value of the property at $292,000. In order to obtain a mortgage loan to purchase the property, Jong Shin provided false and fraudulent financial information to NJM when applying for and obtaining the mortgage loan.

9

      ii.    **The Inflated Appraisal**: On October 17, 2006, M.O. prepared a second appraisal report in preparation for the Straw Purchaser's purchase of this property, stating that the property was worth $550,000. M.O.'s second appraisal report increased the value of the property by $258,000 from his first appraisal report for this property 16 days earlier.

      iii.    **The False Uniform Residential Loan Application**: On October 18, 2006, Jong Shin and E.Z. prepared and submitted a Uniform Residential Loan Application form to SMB which contained false financial information requesting a $521,500 mortgage for Straw Purchaser Tula Rampersaud to purchase this property for $549,000. The application falsely stated that Tula Rampersaud worked as a sales manager for a real estate company in Atlantic City, New Jersey and had a monthly income of $10,720.23. In actuality, Tula Rampersaud worked as an administrator for a health care company and made less than $50,000 per year.

      iv.    **The Loan Was Approved**: Relying on the accuracy of the information contained in the false Uniform Residential Loan Application, the inflated appraisal, and other documents, SMB approved Tula Rampersaud for a $521,500 mortgage loan on November 10, 2006. SMB immediately sold the mortgage to J.P. Morgan Chase.

      v.    **The Closing**: On November 10, 2006, Jong Shin sold the property to Straw Purchaser Tula Rampersaud for $549,000 at a closing held at ETA in Northfield, New Jersey. Anna Shea of ETA conducted the closing and handled all of the disbursements of funds. Anna Shea prepared a false HUD-1 Settlement Statement showing that Straw Purchaser Tula Rampersaud had brought $18,894.95 in cash to the closing, when in fact Tula Rampersaud did not invest any money into the purchase of the property. At the direction of Jong Shin, Anna Shea deducted all of the money due from Tula Rampersaud ($18,894.95) from Jong Shin's proceeds

from the sale of the property so that the financial information on the HUD-1 Settlement Statement would balance and appear to be accurate.

vi. **The Relevant Wire Transfers**: In furtherance of the conspiracy and to effect its object, Jong Shin and others committed and caused to be committed the following wire transactions, among others, involving the sale of the property:

(1) On November 10, 2006, SMB wired $521,500 from an account at Marine Bank in New York into ETA's Escrow Account at TD Bank; and

(2) Also on November 10, 2006, Anna Shea transmitted $228,225.82 via wire communication from ETA's Escrow Account at TD Bank into Jong Shin's TD Bank account ******6772. This wire transfer represents Jong Shin's gain from this fraudulent transaction. Jong Shin used these fraudulently obtained funds, among other things, to: gamble, pay personal expenses, including medical and child support expenses, make mortgage payments in furtherance of the scheme, make pay offs to her coconspirators and to purchase a liquor store.

vii. **Foreclosure**: Jong Shin made approximately 2 mortgage payments on the property, and then stopped paying the mortgage. The mortgage went into default on March 1, 2007, and Lender J.P. Morgan Chase foreclosed on the property on June 5, 2007.

|  | **Date** | **Appraisal** | **Buyer** | **Price** | **Loan** | **Originator** | **Victim** |
|---|---|---|---|---|---|---|---|
| **Original Purchase** | 10/13/06 | 10/1/06 $292,000 | Jong Shin | $285,000 | $228,000 $41,267.50 | NJM | |
| **Flip** | 11/10/06 | 10/17/06 $550,000 | Tula Rampersaud | $549,000 | $521,500 | SMB | J.P. Morgan Chase |
| **Wire Transfer** | 11/10/06 | SMB wired $521,500 from an account in New York to ETA's Escrow Account in New Jersey | | | | | |

b. **1929 Blaine Avenue, Atlantic City, New Jersey**

|  | Date | Appraisal | Buyer | Price | Loan | Originator | Victim |
|---|---|---|---|---|---|---|---|
| **Purchase** | 10/31/06 | 10/2/06 $185,000 | Jong Shin | $150,000 | $120,000 $21,625 | NJM |  |
| **Flip** | 11/16/06 | 10/18/06 $310,308 | Sudesh Rampersaud | $310,000 | $294,500 | SMB | J.P. Morgan Chase |
| **Wire Transfer** | 11/17/06 | SMB wired $298,387.75 from its account in Ohio to ETA's Escrow Account in New Jersey ||||||

c. **148 South Bellevue Avenue, Atlantic City, New Jersey**

|  | Date | Appraisal | Buyer | Price | Loan | Originator | Victim |
|---|---|---|---|---|---|---|---|
| **Purchase** | 6/30/06 | 6/27/06 $305,000 | Jong Shin | $280,000 | $211,200 $50,995.75 | NJM |  |
| **Flip 1** | 8/1/06 | 7/17/06 $438,000 | A.C. | $435,000 | $348,000 $64,368 | SMB |  |
| **Flip 2** | 9/20/06 | 8/12/06 $552,000 | Sudesh Rampersaud | $539,000 | $439,200 $108,744.91 | SMB | M&T Bank |
| **Wire Transfer** | 8/1/06 | SMB wired $354,302.83 from its account in Ohio to ETA's Escrow Account in New Jersey ||||||
| **Wire Transfer** | 9/20/06 | SMB wired $439,200 from its account in New York to ETA's Escrow Account in New Jersey ||||||

d. **138 South Bellevue Avenue, Atlantic City, New Jersey**

|  | Date | Appraisal | Buyer | Price | Loan | Originator | Victim |
|---|---|---|---|---|---|---|---|
| **Purchase** | 6/30/06 | 6/1/06 $305,000 | Jong Shin | $280,000 | $266,000 | SMB |  |
| **Flip** | 8/22/06 | 8/8/06 $495,000 | Tula Rampersaud | $495,000 | $396,000 $73,806.52 | SMB | Credit Suisse |
| **Wire Transfer** | 8/22/06 | SMB wired $400,925.28 from its account in New York to ETA's Escrow Account in New Jersey ||||||

e. **512 Magellan Avenue, Atlantic City, New Jersey**

|  | Date | Appraisal | Buyer | Price | Loan | Originator | Victim |
|---|---|---|---|---|---|---|---|
| **Purchase** | 10/13/06 | 9/19/06 $303,500 | Jong Shin | $270,000 | $216,000 $39,085 | NJM | |
| **Flip** | 12/6/06 | 11/14/06 $495,000 | M.T. | $495,000 | $396,000 | SMB | JP Morgan Chase |
| **Wire Transfer** | 12/6/06 | SMB wired $396,000 from its account in New York to ETA's Escrow Account in New Jersey | | | | | |

f. **136 South Bellevue Avenue, Atlantic City, New Jersey**

|  | Date | Appraisal | Buyer | Price | Loan | Originator | Victim |
|---|---|---|---|---|---|---|---|
| **Purchase** | 5/1/06 | | Jong Shin | $290,000 | $232,000 $57,800 | America's Wholesale Lender | |
| **Flip 1** | 6/28/06 | 5/15/06 $415,000 | Steven Boswell | $415,000 | $332,000 $61,670.65 | SMB | |
| **Flip 2** | 8/29/06 | 8/8/06 $495,000 | Tula Rampersaud | $495,000 | $396,000 $74,150 | SMB | JP Morgan Chase |
| **Wire Transfer** | 6/28/06 | SMB wired $335,979.89 from its account in New York to ETA's Escrow Account in New Jersey | | | | | |
| **Wire Transfer** | 8/29/06 | SMB wired $404,698.54 from its account in Ohio to ETA's Escrow Account in New Jersey | | | | | |

g. **150 South Bellevue Avenue, Atlantic City, New Jersey**

|  | **Date** | **Appraisal** | **Buyer** | **Price** | **Loan** | **Originator** | **Victim** |
|---|---|---|---|---|---|---|---|
| **Purchase** | 6/30/06 | 6/1/06 $305,000 | Jong Shin | $280,000 | $211,200 $59,995.75 | NJ Lenders |  |
| **Flip 1** | 7/31/06 | 7/17/06 $438,000 | A.C. | $435,000 | $348,000 $64,377.84 | Summit Mortgage |  |
| **Flip 2** | 9/26/06 | 8/8/06 $552,000 | Sudesh Rampersaud | $549,000 | $439,200 $108,702 | Summit Mortgage | JP Morgan Chase |
| **Wire Transfer** | 7/31/06 | SMB wired $348,000 from its account in New York to ETA's Escrow Account in New Jersey ||||||
| **Wire Transfer** | 9/26/06 | SMB wired $439,000 from its account in New York to ETA's Escrow Account in New Jersey ||||||

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2 – CONSPIRACY TO COMMIT MONEY LAUNDERING
## (18 U.S.C. § 1956(h))

1. The allegations set forth in paragraphs 1 through 6 and 8 through 22 of Count 1 of this Indictment are realleged and incorporated herein.

2. From in or about June 2006 through in or about December 2006, in Atlantic County, in the District of New Jersey, and elsewhere, defendant

   JONG SHIN,

   did knowingly conspire with Anna Shea, Steven Boswell and others to engage in monetary transactions, namely, deposits, withdrawals, transfers and exchanges of U.S. currency and monetary instruments, through financial institutions affecting interstate commerce, in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, namely, wire fraud, constituting a violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957(a).

3. It was part of the conspiracy that Jong Shin and her co-conspirators caused millions of dollars in fraudulent mortgage loans to be funded during 2006 to enable unqualified Straw Purchasers to purchase residential Properties at inflated prices.

4. It was further part of the conspiracy that through such fraudulent mortgage loans, Jong Shin and her co-conspirators directed millions of dollars into ETA's Escrow Account, and then extracted proceeds from the fraud through transfers, that is, credit memos, wire transfers and checks, from ETA's Escrow Account to Jong Shin and Steven Boswell as discussed below.

5. It was further part of the conspiracy that on or about the dates listed below, Anna Shea of ETA prepared the following money transfers from the ETA Escrow Account for the following approximate amounts in connection with the financing of mortgage loans secured by the following Properties:

| Property | Date | Amount | To | | | From | | |
|---|---|---|---|---|---|---|---|---|
| | | | Name | Account Number | Bank | Name | Account Number | Bank |
| 136 South Bellevue | 6/29/06 | $37,869.97 | Jong Shin | ******6772 | TD Bank | ETA | ******2519 | TD Bank |
| 150 South Bellevue | 8/1/06 | $125,985.28 | Jong Shin | ******6772 | TD Bank | ETA | ******2519 | TD Bank |
| 148 South Bellevue | 8/2/06 | $124,036.86 | Jong Shin | ******6772 | TD Bank | ETA | ******2519 | TD Bank |
| 138 South Bellevue | 8/22/06 | $180,575.40 | Jong Shin | ******6772 | TD Bank | ETA | ******2519 | TD Bank |
| 136 South Bellevue | 8/31/06 | $40,430.81 | Steven Boswell | ******4271 | TD Bank | ETA | ******2519 | TD Bank |
| 148 South Bellevue | 9/20/06 | $98,953.19 | Jong Shin | ******6772 | TD Bank | ETA | ******2519 | TD Bank |
| 150 South Bellevue | 9/27/06 | $107,820.81 | Jong Shin | ******6772 | TD Bank | ETA | ******2519 | TD Bank |
| 133 South Wilson | 11/10/06 | $228,225.82 | Jong Shin | ******6772 | TD Bank | ETA | ******2519 | TD Bank |
| 1929 Blaine Avenue | 11/17/06 | $140,830.76 | Jong Shin | ******6772 | TD Bank | ETA | ******2519 | TD Bank |
| 512 Magellan | 12/6/06 | $115,253.45 | Jong Shin | *******1865 | JP Morgan Chase | ETA | ******2519 | TD Bank |

6. It was further part of the conspiracy that on August 29, 2006, Anna Shea of ETA wrote a check from the ETA Escrow Account for $40,430.81 representing the proceeds from the sale of 136 South Bellevue Avenue, Atlantic City, New Jersey, to Steven Boswell, the Straw Purchaser, and gave the check to Jong Shin. Both Jong Shin and Steven Boswell

16

endorsed the check, and then Steven Boswell deposited the check into his TD Bank checking account. On August 30, 2006, Steven Boswell wrote a check to Jong Shin from his TD checking account ******4271 for the same amount, $40,430.81. Jong Shin deposited the check from Steven Boswell into her TD Bank checking account.

7. It was further part of the conspiracy that Jong Shin used the proceeds from the scheme which had been deposited into her bank accounts in order to further and continue the scheme by:

   a. paying kickbacks to her coconspirators including, but not limited to, Anna Shea, M.O. and the Straw Purchasers;

   b. paying mortgage payments on the Properties for approximately three months each;

   c. paying various living expenses; and

   d. purchasing a liquor store in Englewood, New Jersey.

   All in violation of Title 18, United States Code, Section 1956(h).

A TRUE BILL:

_____
FOREPERSON

_____
PAUL J. FISHMAN
United States Attorney

CASE NUMBER: 2009R00789

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

JONG SHIN

## INDICTMENT FOR

Title 18, United States Code, Section 1349
and Title 18, United States Code, Section 1956(h)

_____
A True Bill,

_____
Foreperson

PAUL J. FISHMAN
UNITED STATES ATTORNEY
NEWARK, NEW JERSEY

DIANA VONDRA CARRIG
ASSISTANT U.S. ATTORNEY
856-757-5026